UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**04** CR **1 0 2 8 6** PBS

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. |
| v. | VIOLATIONS: |
| | 18 U.S.C. § 1344 (Bank Fraud) |
| | 18 U.S.C. § 1014 (False Statements) |
| MICHAEL W. ALCOTT, | 18 U.S.C. § 982 (Forfeiture) |
| Defendant | |

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

1.     At all times material to this Indictment, Defendant MICHAEL W. ALCOTT ("ALCOTT") was an individual who resided in Scituate, Massachusetts.

2.     At all times material to this Indictment, ALCOTT was founder and president of ARK Associates, Inc. d/b/a Accounting Recruiters International ("ARK Associates"). ALCOTT founded ARK Associates in 1999 as a temporary and permanent employment placement firm specializing in employees with business finance backgrounds. ARK Associates' offices were located at 1250 Hancock St., Suite 504S, Quincy, Massachusetts and 25 Corporate Drive, Burlington, Massachusetts.

### South Shore Savings Bank

3.     In or about July 13, 2000, ALCOTT and ARK Associates entered into a lending relationship with South Shore Savings Bank ("South Shore"), a federally insured financial institution.

4.    South Shore and ARK Associates entered into a Loan and Security Agreement (the "Line of Credit") establishing a $500,000 line of credit. ALCOTT signed the Line of Credit on behalf of ARK Associates. ALCOTT and his wife were also guarantors on the Line of Credit.

5.    As a condition of the Line of Credit, ALCOTT was required to submit financial information to South Shore. This included both financial statements and account receivable information for ARK Associates.

6.    ALCOTT submitted false and fraudulent financial information to South Shore. ALCOTT submitted account receivable information to South Shore that inflated the true account receivable information for ARK Associates. ALCOTT also submitted false annual financial statements for ARK Associates for the fiscal years 2000, 2001 and 2002. These financial statements falsely reported that ARK Associates was a profitable business when, in fact, ARK Associates was not profitable.

7.    Not only were the financial statements ALCOTT submitted to South Shore false, but ALCOTT also falsely represented to South Shore that the 2000 and 2001 financials for ARK Associates submitted to South Shore had been "reviewed" by an independent auditor, Kevin P. Martin & Associates, P.C., a/k/a, KPM ("KPM"). In a "review," an auditor provides limited assurance on an entity's financial statements. As part of a review, an auditor makes some inquiry into client management, accounting practices, internal control structure, and analytical procedures used by the organization.

8.    Although ARK Associates did hire KPM to perform "reviews" of the 2000 and 2001 financials, ALCOTT submitted to South Shore financial information that was different from that upon which the KPM actually performed its review procedures. As the table below

2

demonstrates, the financial statements reviewed by KPM showed ARK Associates suffering

losses, whereas the financial statements ALCOTT submitted to South Shore reported a growing

profit:

| Financial Statement Entry | Actual Review by KPM | Submitted to South Shore |
|---|---|---|
| Calendar Year 2000 | | |
| Service Revenue | $1,359,472 | $1,632,405 |
| Cost of Services | $941,325 | $794,448 |
| Gross Margin | $418,147 | $837,957 |
| | | |
| Net Operating Income/(Loss) Before Income Tax | ($172,697) | $32,436 |
| | | |
| Calendar Year 2001 | | |
| Service Revenue | $1,214,367 | $5,019,916 |
| Cost of Services | $858,403 | $2,775,172 |
| Gross Margin | $355,964 | $2,244,744 |
| | | |
| Net Operating Income/(Loss) Before Income Tax | ($714,315) | $111,976 |

9.     Based upon the false and fraudulent financial information ALCOTT provided,

South Shore increased ARK Associates' borrowing limits under the Line of Credit on at least

three occasions. On or about June 26, 2001, South Shore increased ARK Associates' borrowing

limit to $1 million. On or about January 10, 2002, South Shore again increased ARK Associates'

borrowing limit to $1.5 million. On or about August 21, 2002, South Shore increased ARK

Associates' borrowing limit to $2.5 million. From August 2002 to approximately June 2003, ARK Associates drew down nearly the entire line of credit and spent the funds.

10.    In connection with the August 21, 2002 increase in ARK Associates' borrowing limit to $2.5 million, South Shore required that ARK Associates submit an "audit quality" financial statement (as opposed to a "review quality" financial statement). An audit is a higher level of scrutiny than a review. As part of an audit, the auditor provides verification of the financial statements' claims and assertions and expresses an opinion on the entity's financials taken as a whole.

11.    ALCOTT, however, was unable to secure an audited financial statement for 2002 that would show that ARK Associates was profitable. When ALCOTT asked Kevin P. Martin ("Martin"), a certified public accountant and owner of KPM, for details about KPM possibly performing an audit of ARK Associates' financial statement for 2002, Martin observed that ARK Associates had suffered substantial losses. Martin communicated to ALCOTT that KPM would likely have trouble concluding that ARK Associates was a "going concern." ALCOTT then did not engage KPM to perform an audit of ARK Associates.

12.    ALCOTT nevertheless submitted in or about May 2003 a fraudulent financial statement for 2002 that purported to show that ARK Associates' 2002 revenue had increased by about 149% over its 2001 revenue. It also did not show the true losses ARK Associates had suffered. The fraudulent financial statement also was accompanied by a fraudulent "audit" opinion letter. The opinion letter, dated May 6, 2003, stated that KPM had conducted an audit of the 2002 financial statement and that the 2002 financial statement presented fairly the financial condition of ARK Associates. The opinion did not state that ARK Associates may have

4

trouble continuing as a "going concern." The opinion bore the name "David P. Kane, Partner-Audit Manager."

13.     On or about June 13, 2003, Martin told South Shore that, not only was no one named "David Kane" employed at his firm, but that the financial statements which were submitted to South Shore and purportedly audited by KPM were not audited by KPM. In fact, KPM did not perform any work for ARK Associates on 2002 matters.

14.     Upon its discovery of ALCOTT's conduct, South Shore exercised its rights under the Line of Credit and seized collateral of ARK Associates. At that time, ARK Associates had drawn down nearly the entire Line of Credit and had an outstanding balance owed to South Shore of $2,496,485.17.

### Boston Private Bank & Trust Company

15.     During 2003, ALCOTT attempted to secure a line of credit from Boston Private Bank & Trust Company ("Boston Private Bank"), a federally insured financial institution. ALCOTT had applied to Boston Private Bank for a $3.5 million line of credit for ARK Associates. On or about June 3, 2003, Boston Private Bank received an e-mail signed "Michael W. Alcott," saying "I am fed-exing information at this time . . . . . . I have enclosed my 2002 audit, with 3 years results . . . ." ALCOTT submitted to Boston Private Bank the same false "audited" 2002 financial statement that ALCOTT had given to South Shore. The financial statement also was accompanied by a fraudulent audit opinion from "David Kane" similar to that ALCOTT supplied to South Shore.

5

16.    On or about June 18, 2003, Martin notified Boston Private Bank that the copy of the "audited" financial statements attributed to KPM were not audited by KPM.  Boston Private Bank then terminated its loan activity with ALCOTT and ARK Associates.

17.    ARK Associates ceased operations on or about July 1, 2003.

## COUNT ONE
### Bank Fraud
### 18 U.S.C. § 1344

18.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this

Indictment and further charges that:

19.     From at least on or about July 13, 2000 through on or about July 1, 2003, the

precise dates being unknown to the Grand Jury, the defendant MICHAEL W. ALCOTT, in the

District of Massachusetts and elsewhere, knowingly executed, and attempted to execute, a

scheme and artifice to defraud South Shore Savings Bank, a financial institution, in violation of

18 U.S.C. § 1344(1).

## COUNT TWO
**False Statements**
**18 U.S.C. § 1014**

20.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment and further charges that:

21.    In or about May 2003, the defendant MICHAEL W. ALCOTT, in the District of Massachusetts, knowingly made a false statement for the purpose of influencing South Shore Savings Bank, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, upon a loan and any change and extension of a loan by renewal, deferment of action and otherwise and the acceptance, release and substitution of security therefor, in violation of 18 U.S.C. § 1014.

8

## COUNT THREE
**False Statements**
**18 U.S.C. § 1014**

22.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment and further charges that:

23.    On or about June 3, 2003, the defendant MICHAEL W. ALCOTT, in the District of Massachusetts, knowingly made a false statement for the purpose of influencing Boston Private Bank & Trust Company, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, upon an application for credit, in violation of 18 U.S.C. § 1014.

9

## NOTICE OF ADDITIONAL FACTORS

The Grand Jury further charges that:

24.    The offenses charged in Counts One, Two and Three of the Indictment continued until at least June 2003.

25.    The scheme or artifice to defraud alleged in Count One of this Indictment involved a loss of more than $1,000,000 and less than $2,500,000.  See U.S.S.G. § 2B1.1(b)(1)(I-J).

26.    ALCOTT derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense alleged in Count One of this Indictment.  See U.S.S.G. § 2B1.1(b)(12)(A).

27.    The false statement alleged in Count Two of this Indictment involved an intended loss of more than $1,000,000 and less than $2,500,000.  See U.S.S.G. § 2B1.1(b)(1)(I-J).

28.    The offense alleged in Count Three of this Indictment involved an intended loss of $3,500,000.  See U.S.S.G. §§ 2B1.1(b)(1)(J), 2X1.1 & 2X5.1.

## **FORFEITURE ALLEGATION**
## **(18 U.S.C. § 982)**

Pursuant to 18 U.S.C. § 982(a)(2)(A), as a result of committing one or more of the offenses set forth in Counts One, Two and Three of this Indictment, MICHAEL W. ALCOTT, defendant herein, shall forfeit to the United States any property constituting, or derived from, proceeds he obtained, directly or indirectly, as a result of his violations of 18 U.S.C. §§ 1014 and 1344.

11

A TRUE BILL

FOREPERSON OF THE GRAND JURY

Assistant United States Attorney
DISTRICT OF MASSACHUSETTS September/6, 2004
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

12

℀JS 45 (5/97) - (Revised USAO MA 1/15/04)

**Criminal Case Cover Sheet** **04 CR 1 0 2 8 6 PBS** **U.S. District Court - District of Massachusetts**

**Place of Offense:** Massachusetts    **Category No.** II    **Investigating Agency** FBI

**City** Quincy    **Related Case Information:**

**County** Norfolk
Superseding Ind./ Inf.    N/A    Case No.    N/A
Same Defendant    N/A    New Defendant    N/A
Magistrate Judge Case Number    03M-1160-JGD
Search Warrant Case Number    03M-1160-JGD
R 20/R 40 from District of

**Defendant Information:**

Defendant Name    Michael W. Alcott    Juvenile    ☐ Yes    ☒ No

Alias Name

Address    4 Jason Lane, Scituate MA 02066

Birth date (Year only):    1961    SSN (last 4 #):    1704    Sex    M    Race:    Caucasian    Nationality:    USA

**Defense Counsel if known:**    Robert M. Goldstein    **Address:**    114 State Street
Boston, MA 02109

**Bar Number:**

**U.S. Attorney Information:**

**AUSA**    Jack W. Pirozzolo    **Bar Number if applicable**    564879

**Interpreter:**    ☐ Yes ☒ No    **List language and/or dialect:**

**Matter to be SEALED:**    ☐ Yes    ☒ No

☐ **Warrant Requested**    ☒ **Regular Process**    ☐ **In Custody**

**Location Status:**

**Arrest Date:**

☐ **Already in Federal Custody as**    in    .
☐ **Already in State Custody**    ☐ **Serving Sentence**    ☐ **Awaiting Trial**
☐ **On Pretrial Release:**    **Ordered by**    **on**

**Charging Document:**    ☐ Complaint    ☐ Information    ☒ Indictment

**Total # of Counts:**    ☐ Petty    ☐ Misdemeanor    ☒ Felony    3

**Continue on Page 2 for Entry of U.S.C. Citations**

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

**Date:** 9/16/04    **Signature of AUSA:**

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant**      Michael W. Alcott _____

U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. § 1344 | Bank Fraud | 1 |
| Set 2 | 18 U.S.C. § 1014 | False Statement To Bank | 2 |
| Set 3 | 18 U.S.C. § 1014 | False Statement To Bank | 3 |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:**     Forfeiture Allegation, 18 U.S.C. § 982(a)(2)(A)

Information previously filed was voluntarily dismissed without prejudice.  Information case number was

04-10184-PBS

js45.indictment.wpd - 1/15/04 (USAO-MA)