```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2                          BOSTON DIVISION

 3


 4   UNITED STATES OF AMERICA    .
                                 .
 5        vs.                    .   1:04-CR-10286-PBS-ALL
                                 .
 6   MICHAEL W. ALCOTT           .   Thursday, April 28, 2005
                                 .   Courtroom 19
 7                               .   1 Courthouse Way
                                 .   Boston, MA. 02210
 8

 9

10                        TRANSCRIPT OF HEARING

11


12              BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
13


14   A P P E A R A N C E S:

15

     FOR THE GOVERNMENT:
16    United States Attorney's Office
      BY:  Jack W. Pirozzolo, Esquire
17    1 Courthouse Way
      Boston, MA. 02210
18
     FOR THE DEFENDANT MICHAEL W. ALCOTT:
19    BY:  Peter L. Muse, Esquire
      Muse & Muse
20    15 Foster Street
      Quincy, MA. 02169
21
       Court Reporter:         Niles Jon Fowlkes, RMR
22                             20 Malverna Road
                               Roslindale, MA. 02131-4512
23                             Tel.  617-469-0756

24
        Proceedings Reported by Stenotype, Transcript Produced by
25                     Computer-Aided Transcription
```

2

| | |
|---|---|
| 1 | **I N D E X** |
| 2 | |
| 3 | |
| 4 | Hearing - 3 |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | * * * |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | Thursday, April 28, 2005                                                 |
| 2  |                                                                          |
| 3  |                                                                          |
| 4  | [4:12 p.m.]                                                              |
| 5  | THE CLERK: Please be seated. Case of United                              |
| 6  | States vs. Michael Alcott, Criminal Action No. 04-10286,                 |
| 7  | matter now before this Court.                                            |
| 8  | Would counsel and U.S. Pre-Trial Services please                         |
| 9  | identify themselves for the record.                                      |
| 10 | MR. PIROZZOLO: Good afternoon, your Honor. Jack                          |
| 11 | Pirozzolo for the government.                                            |
| 12 | MR. MUSE: Good afternoon, your Honor. Peter Muse                         |
| 13 | on behalf of Mr. Alcott.                                                 |
| 14 | THE COURT: All right. Thank you.                                         |
| 15 | I understand there --                                                    |
| 16 | PRETRIAL SERVICES OFFICER: Basil Cronin for                              |
| 17 | Pre-Trial Services.                                                      |
| 18 | THE COURT: Why are we here?                                              |
| 19 | MR. MUSE: If I may, your Honor, when we were last                        |
| 20 | in the magistrate's session, we scheduled this matter for a              |
| 21 | Rule 11 hearing, and it was -- at that time, there had been              |
| 22 | some -- had had discussions with Mr. Alcott, and it was our              |
| 23 | plan to, in fact, enter a plea today.                                    |
| 24 | There have been --                                                       |
| 25 | THE COURT: You need to speak up just a little                            |

1   bit.
2           MR. MUSE: Excuse me.
3           There have been developments since that time. And
4   last week I called Mr. Pirozzolo and just indicated that
5   Mr. Alcott's condition had -- had worsened considerably,
6   his medical condition, and when I schedule -- I
7   scheduled --
8           THE COURT: Is he here right now?
9           MR. MUSE: He is.
10          THE COURT: All right.
11          What is the medical problem?
12          MR. MUSE: He is -- the Court may recall when he
13  was before the Court last fall, he was diagnosed with
14  prostate cancer. That condition has worsened considerably,
15  and he has now been diagnosed with advanced stage of
16  prostate cancer where it has spread to his pelvic bone.
17          I provided those records to Mr. Pirozzolo. I
18  received it -- the Court will note it is dated the 21st. I
19  received it the end of the week.
20          At this point, he has begun a schedule of
21  treatment at Mass. General that occurs almost on a daily
22  basis.
23  [Documents exhibited to the Court.]
24          And when he came in to see me last week, Judge, I,
25  quite frankly, was unable to speak with him for more than

1   15 minutes. I indicated to my brother that, uh, that at
2   this point I -- because of his condition, I couldn't even
3   carry on a discussion regarding procedurally what would
4   occur, with the -- what the, uh, what he -- wasn't
5   satisfied that I would have a meaningful discussion to make
6   sure he understood --
7           THE COURT: Well, so let me just -- I understand
8   that he's sick and can't do it today; that's fair enough.
9           MR. MUSE: Correct.
10          THE COURT: I don't know why I just got this
11  thirty seconds ago, but I am trying to skim it to understand
12  what is going on; but appears there is a whole new set of
13  charges --
14          MR. PIROZZOLO: I apologize, your Honor. This is
15  something that I put together today, okay? And I -- and it
16  was just -- it was really something I need -- I did put
17  together at the last minute. I didn't even get a chance to
18  file it electronically, your Honor. I apologize for that.
19          THE COURT: Well, actually, what you want, in
20  other words, he's got -- he's got -- there are two things
21  going on here. One is his physical condition has worsened;
22  and, on the other hand, his legal position has worsened
23  because you have this whole new set of charges.
24          MR. PIROZZOLO: That is correct, your Honor.
25  Well, they are not charges yet, your Honor. This has to do

```
 1   with issues that have arisen while he's on pre-trial
 2   release.  This is a matter that is still under
 3   investigation.
 4           However, I felt it was appropriate for me to bring
 5   this to the attention of the Court and to Pre-Trial
 6   Services at this time, because we believe -- I believe,
 7   it's essential to modify the terms of his pre-trial release
 8   status.
 9           Mr. Alcott, until now, has been essentially free
10   to move about the country as he has seen fit.  He has
11   traveled quite a bit.  He's been running a business, I
12   suppose.  While he's been doing that, he was engaged in
13   this extortionous scheme, using the Internet, using bank
14   accounts he set up down in Atlanta, shortly after the
15   indictment had been filed in this case, where he was taking
16   advantage of trying to extort money from a doctor out in
17   California.
18           We want that possibility to end, okay?  And so we
19   are sympathetic to his medical condition, okay?  We haven't
20   yet verified it, frankly.
21           THE COURT:  Well, do you want to see the stuff
22   that I have just been given?
23           MR. PIROZZOLO:  I have seen the letter, your
24   Honor, that comes from Mass. General, your Honor.
25           THE COURT:  Yes.
```

```
 1         MR. PIROZZOLO:  But for the fact that there is
 2  this medical condition that I am taking at face value at
 3  this time, we would be seeking to revoke his status.
 4         THE COURT:  Well, that is what I couldn't
 5  understand.  On the one hand, I get this serious allegation
 6  of a set of extortions, and, yet, on the other hand, you
 7  seem to be agreeing to keep him out.
 8         What do you think about these proposed changes?
 9         MR. MUSE:  Your Honor, my concern at this point is
10  Mr. Alcott's medical condition, and -- and if there is some
11  type of an accommodation to be reached that would allow him
12  to continue obtaining that treatment, then I would defer to
13  the Court.  And I've indicated to my brother that I, in good
14  faith, can't come in here and say that I'm looking for a
15  continuance on a plea because of this medical condition and
16  his need to obtain this treatment, and then suggest that he
17  should be -- then -- then simply disregard this matter
18  that's been brought to my attention.
19         So I'm not objecting to --
20         THE COURT:  How far along are you?  Are you
21  planning on superseding in the near future, or planning on
22  separate indictment?  What are you planning on that?
23         MR. PIROZZOLO:  Probably proceed separately, your
24  Honor, but I don't know.  This is a matter, if you read the
25  affidavit, that was being investigated in California by the
```

```
 1   San Diego FBI, and they contacted us about this and provided
 2   us information --
 3           THE COURT:  So he might be indicted in California?
 4           MR. PIROZZOLO:  Could be indicted in California,
 5   your Honor.  I am not sure how it's going to work out; it's
 6   still a matter currently under investigation.
 7           But I think I felt, in candor, I had to bring this
 8   to the attention of the Court, your Honor.  And so -- and
 9   so at this time, I believe it's entirely appropriate, at a
10   minimum, to revoke -- to require him to stay home and only
11   cancer treatment.
12           THE COURT:  Do you have any opposition to anything
13   they've requested?
14           MR. MUSE:  Just be one or two conditions that I
15   would ask, Judge.  He -- one, that he -- if he is placed on
16   a monitor, electronic monitor, that he be allowed to consult
17   with me in my office.
18           THE COURT:  Yes.  I don't have a problem with
19   consulting with his attorney.
20           MR. MUSE:  And Mr. Alcott has requested that he be
21   allowed to attend church services.
22           THE COURT:  Sure.
23           Mr. Cronin, does this make sense given the new
24   situation?
25           PRETRIAL SERVICES OFFICER:  I think it does, your
```

1  Honor.  I wouldn't have any other suggestions until we find
2  out more about it, but we could accommodate that tonight if
3  you so ordered.
4           THE COURT:  Well, does he have -- I know nothing
5  about him.  I guess I don't even have a pre-trial.  Do you
6  have a pre-trial?  Does he have a family?
7           MR. MUSE:  He does.  He's married, and has two
8  young children and has two older children from another
9  marriage, but currently resides with his wife and two
10 children who are two and three years old.
11          THE COURT:  Where does he work?
12          MR. MUSE:  He has worked -- he has run his own
13 businesses for the last year, has operated a, uh, a temp.
14 service out of his home where he provides temporary
15 employees for various businesses; and that has not been very
16 successful, and in all likelihood he would be expecting to
17 close that business up shortly anyway.
18          THE COURT:  All right.  So working is not an
19 issue?
20          MR. MUSE:  No, no.
21          MR. PIROZZOLO:  I don't believe so, your Honor.
22          THE COURT:  All right. So this makes sense.
23          So I'm going to impose -- I'm going to allow the
24 motion for modification and release conditions, and the
25 only additional conditions would be church and consulting

```
 1   with his attorney, not for employment.
 2            What do I do now?  Does he still -- do you still
 3   think he might want to plead guilty, or do you want a trail
 4   date?  What do you want?
 5            MR. MUSE:  Your Honor, I was -- frankly, Judge,
 6   this new matter certainly effects, I suppose, how this may
 7   proceed and how quickly it may proceed.
 8            THE COURT:  Well, does he have -- let me just -- I
 9   don't mean to be cruel -- does he have terminal cancer?
10            MR. MUSE:  He does, Judge.  And in the report, it
11   suggests that the treatment he's receiving now is, uh, may
12   provide some relief, but the prognosis is that there is
13   zero percent likelihood of surviving more than two years.
14    [Pause-Court reads.]
15            THE COURT:  Well, what do I do here?  What -- it's
16   -- in other words, it says that he has zero percent survival
17   rate.
18            MR. PIROZZOLO:  After two years, that's what the
19   letter says, your Honor.
20            THE COURT:  So I'm trying to figure this out.
21            MR. MUSE:  I -- I guess what I'd like to see,
22   Judge, if I could, is just get a handle on what -- what this
23   treatment, what relief it may provide.  It may very well be
24   that his prognosis improves, I don't know, or that he is in
25   a position -- we got a firmer timetable with regard to his
```

1  treatment.
2        My aim would be, Judge, to -- if he is to -- if he
3  is to plead, that he be allowed to continue with whatever
4  treatment it is that will either provide him with some
5  opportunity to survive or --
6        THE COURT:  I don't want to think about the
7  underlying charges, but I don't know what the losses were, I
8  don't know what the --
9        MR. PIROZZOLO:  May I be heard on that, your
10 Honor --
11       THE COURT:  Yes.
12       MR. PIROZZOLO:  -- just by way of background?
13       The case is a bank fraud case.  There is an actual
14 loss of $2.5 million.  It related to fraudulent loan
15 applications that Mr. Alcott submitted to South Shore Bank.
16 In addition, at the time he had run through the money that
17 he had taken from South Shore Bank, he attempted to and
18 nearly did secure an additional $3.5 million loan from
19 another bank when his fraud was discovered.  It was
20 basically he was submitting false financial statements to
21 the bank.
22       By way of background a little bit, your Honor, uh
23 --
24       THE COURT:  What would you be looking -- I'll take
25 your word for it, but there is no violence in that.

```
 1          MR. PIROZZOLO:  There is no violence in that, your
 2   Honor; but have you seen his record?
 3          THE COURT:  I have seen nothing.  I have seen
 4   nothing.  I know nothing about the case.  I walked in here
 5   expecting a plea; I get a packet this thick and I hear about
 6   terminal cancer.  So I'm a work in progress.
 7          MR. PIROZZOLO:  Mr. Alcott, I believe, spent 12
 8   years in prison for a violent crime, I believe it was armed
 9   robbery.  Mr. Cronin [pre-trial services officer] I think
10   has the record.  Mr. Alcott has a very lengthy record.  Mr.
11   Alcott is, as defendants go, a very sophisticated defendant
12   in the system.
13   [Documents exhibited to the Court.]
14          I may be wrong about the period of years.  I'm
15   working off of memory, I don't have the record in front of
16   me, your Honor, but my memory is that he did spend time in
17   prison.
18          THE COURT:  Well, this is what I think I should
19   do --
20          MR. PIROZZOLO:  Could I be heard a little bit
21   further, your Honor, on the matter?
22          THE COURT:  Well, I just need -- tell me what the
23   next step is.  Do I schedule it for a plea?  Do I schedule
24   it for a trial?  Do I indefinitely put it off?
25          MR. PIROZZOLO:  If I might make a suggestion?
```

```
1            THE COURT:  Yeah.
2            MR. PIROZZOLO:  I don't think indefinitely putting
3   it off is an option, okay, and the government would object
4   to that.
5            THE COURT:  All right.
6            MR. PIROZZOLO:  I can give you reasons for that --
7            THE COURT:  No.
8            MR. PIROZZOLO:  -- but I believe that is
9   inappropriate at this time.
10           I don't know, but given the evidence against Mr.
11  Alcott, based on my discussions with Mr. Muse, I'm not sure
12  that this is a triable case from his perspective, okay?
13  And I've been hearing for months that this is simply going
14  to be a plea, okay?
15           One way to approach this, your Honor, is to have
16  the plea but then work out an accommodation schedule so he
17  can go through the treatment, which I understand may be a
18  period of four months or so that is being proposed by his
19  doctors.  And we could either extend the pre -- the, uh,
20  the PSR process so that the actual sentencing comes after
21  he's gone through the treatment, or we go through the
22  process and then there may be a possibility of delaying a
23  report date until after he's gone through the, uh, gone
24  through the process that's been prescribed by his doctors.
25           THE COURT:  Delaying a report date means he's
```

1   going to be dead.  I mean, I'm just -- and I don't want to
2   send someone to jail for the last six months of his life.
3          Let me do this.  You don't know the medical
4   situation yet; you haven't talked to the doctor; right?
5          MR. MUSE:  Uh --
6          THE COURT:  I need to resolve -- I need to get to
7   the point --
8          MR. MUSE:  And I don't think we are there, Judge.
9   In talking to his doctor last week, I think he's -- he's
10  done this treatment.  Some of it is of an experimental
11  nature, and it may not be for another, say, few weeks or
12  month before we --
13         THE COURT:  Why don't I set up a plea date.
14         MR. MUSE:  Okay.
15         THE COURT:  And instead of having this all popped
16  on me at the last minute both of you do research about
17  realistically is he competent and capable of entering a
18  plea.  If he can, I'd want to do it, and then I'll deal with
19  the sentencing ramifications later on.
20         MR. MUSE:  It was only popped on you at the last
21  minute because it was popped on us at the last minute.
22         THE COURT:  I understand, but I have two sets of
23  new phenomenon here, and I'm trying to balance them in my
24  mind, which is, on the one hand, if all this new stuff
25  hadn't came up, I would be feeling very, you know, "Oh,

1    well, this is just a bank fraud; take your time," but now I
2    have this extortion scheme.  So I'm glad you brought that to
3    my attention; that's pretty serious on the scheme of things.
4            And so why don't we do this.  Why don't I see you
5    in three weeks, does that make sense, either with or
6    without him, depending on what his situation is.  We'll
7    either do the plea then, or I'll have an affidavit with
8    some documentation about when he can do the plea.
9            MR. MUSE:  Fine.  What I will do is I'll be in
10   contact with Mr. Pirozzolo and the Court and try and provide
11   that information in advance of that day, Judge.
12           THE COURT:  Now, is this all to be filed under
13   seal?  Obviously, his medical condition should be filed
14   under seal.
15           And what about your thing?
16           MR. PIROZZOLO:  Well, I'd be happy to have it
17   filed under seal, your Honor.
18           THE COURT:  It's an ongoing investigation, that's
19   the problem.
20           MR. PIROZZOLO:  It is, your Honor, but I guess
21   I'll leave it to your discretion.  I would ask that it be
22   filed under seal but I didn't file it under sale.  So... .
23           THE COURT:  Don't forget, once this stuff goes on
24   the World-Wide Web you can't take it back.  Why don't I do
25   this.  Why don't --

1   MR. PIROZZOLO: I did not file it electronically,
2   your Honor. I did not file it electronically.
3   THE COURT: But it will be scanned.
4   MR. PIROZZOLO: Okay.
5   THE COURT: So why don't I put them all under
6   seal.
7   MR. PIROZZOLO: Okay. Should I --
8   THE COURT: At this point it's an ongoing
9   investigation, and to boot, this is a very confidential and
10  private matter having to do with his medical condition.
11  MR. PIROZZOLO: Should I file a motion, your
12  Honor, or enter an order on the record.
13  THE COURT: I'm sealing it.
14  MR. PIROZZOLO: You're sealing it.
15  THE COURT REPORTER: Your Honor, does that include
16  the transcript, as well?
17  THE COURT: The transcript, yes. Yes.
18  MR. PIROZZOLO: Thank you, your Honor.
19  THE COURT: Now, let's pick a date, in which case
20  you're going to -- I'll either do the plea on that day, it
21  will marked as a Rule 11 hearing, or motion for continuance
22  to a realistic date, or I'm just going to need a status to
23  figure out what to do. In other words, given the extortion
24  scheme, I'm not sure I'm willing to put it off for real
25  long.

```
 1            MR. MUSE:  That's fine.  And I'll do my best to
 2   obtain whatever medical information will assist the Court.
 3            THE CLERK:  May 18th at 4:00 p.m.?
 4            MR. MUSE:  Could we go the 19th, Mr. Alba?
 5            THE CLERK:  Well --
 6            MR. MUSE:  Twenty-fourth?
 7            THE CLERK:  A lot of stuff on.  Twenty-fourth at
 8   --
 9            THE COURT:  It will only take a half an hour.
10            THE CLERK:  All right.  4:00 on the 24th.
11            MR. PIROZZOLO:  That's fine, your Honor.
12            THE COURT:  Let me ask you this:  Are there any
13   assets?
14            MR. MUSE:  No.
15            THE COURT:  Are you court appointed?
16            MR. MUSE:  No.  I was privately retained, Judge.
17            THE COURT:  Retained?
18            I'm just playing this out in my mind, given the
19   financial losses to the bank and the extortion, was there
20   any money paid out on the alleged extortion scheme?
21            MR. PIROZZOLO:  Not that we know of, your Honor.
22            THE COURT:  So there is no money there.
23            I'm just trying to think through if he pleads
24   guilty what a possible sentence would be in these
25   situations, and the one thing I want to do is make sure
```

```
 1      none of the ill-gotten gains disappeared.
 2              MR. MUSE:  No.  I think my understanding is that
 3      there was also a civil suit.
 4              THE COURT:  Restitution has happened?
 5              MR. MUSE:  I can get more details, but my
 6      understanding is that there has been restitution made.
 7              THE COURT:  Is that right?  Are the banks out of
 8      pocket?
 9              MR. PIROZZOLO:  The banks are out of packet a
10      substantial amount of money, your Honor, yes.
11              MR. MUSE:  Whatever he had, I think has been given
12      up already, Judge, is what I meant to say.
13              MR. PIROZZOLO:  Whatever he had, there was some
14      security interest in some of the property, and I believe
15      that that was turned over as part of the civil proceeding,
16      but it was well short of the amount of loss, about
17      $2 million short.
18              THE COURT:  Well, this is going to be messy,
19      because there is a widow and two babies.  I don't know if
20      there is substitute -- I notice you were seeking forfeiture.
21      I would just suggest talking about all these things.
22              MR. PIROZZOLO:  Sure.  Okay, your Honor.
23              I do appreciate Mr. Alcott's personal situation,
24      and I want you to know that we've tried make a number of
25      accommodations.  We have known and Mr. Alcott's cancer has
```

1  been a feature of the way we've been proceeding in the case
2  from the beginning from at least a year ago when we were
3  initially negotiating a plea agreement with his prior
4  counsel, not Mr. Muse.  There was information that was
5  filed and then --
6          THE COURT:  No, no.  I am not faulting you at all.
7  I'm just simply saying I've actually never had this come up
8  unless, hopefully, the doctor is wrong, but if the doctor is
9  right there is an end story here, and -- and, plus, you have
10 a wife and two children.
11         MR. PIROZZOLO:  It's a very unfortunate situation,
12 your Honor.
13         THE COURT:  And a huge monetary loss, plus an
14 extortion scheme.  It's sort of -- I can't quite see the end
15 game right now with what happens.
16         MR. PIROZZOLO:  Well, you know, when he goes home
17 and kisses those two kids good night at the same time he's
18 doing the extortion scheme, your Honor, that's something to
19 take into consideration, your Honor.
20         THE COURT:  I hear you.  I hear you.  I hear you.
21 I understand that.
22         All right.  I'll think about it; you'll think
23 about it.
24         MR. MUSE:  Yes, your Honor.
25         THE COURT:  But we need to move it to second base,

1  and figure out if there is a plea or a trial, and if he's
2  competent after all this cancer therapy.
3              MR. MUSE:  No.  And my brother's been patient, and
4  I indicated that perhaps we would leave it on today and seek
5  some guidance from the Court.
6              THE COURT:  And let me say to you, Mr. Alcott, I
7  have genuine sympathy for your medical condition, but when I
8  read this extortion scheme, truthfully, if you weren't sick,
9  I would be revoking your bail.  So but there is an express
10 order not to be in touch with any of these people, but in
11 general I'm also saying you cannot commit any more crimes
12 regardless of the medical condition.  It's not -- it's not a
13 safe harbor.  All right.  Thank you.
14             MR. PIROZZOLO:  Thank you, your Honor.
15             THE CLERK:  Court is in recess.
16  [Recess at 4:34 p.m.]
17                          * * *
18             I certify that the foregoing is a correct
19 transcript from the record of proceedings in the
20 above-entitled matter.
21
22 Date:  June 20, 2005
23
24
                                    Signature of Court Reporter
25