# ATTACHMENT B

USA v. Michael Alcott - July 20, 2005 - Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


```
*  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          *
                Plaintiff           *
                                    *
        v.                          *  Criminal No. 04-10286-PBS
                                    *
MICHAEL ALCOTT,                     *
                Defendant           *
*  *  *  *  *  *  *  *  *  *  *  *
```

**PLEA**

Before the Honorable
United States District Court Judge Patti B. Saris


APPEARANCES:

        Office of the United States Attorney
           By Assistant US Attorney Jack Pirozzolo
           One Courthouse Way
           Boston, Massachusetts  02210
           for the United States.

        Attorney Kevin Barron,
           453 Washington Street, Suite 5B,
           Boston, Massachusetts  02111-1325
           for the Defendant.

                Courtroom 19 - 7th Floor
                One Courthouse Way
                Boston, Massachusetts 02210
                July 20, 2005
                3:17 to 3:51 PM


Nancy L. Eaton - Per Diem Court Reporter
eatonnanc@cs.com
617-633-5178

USA v. Michael Alcott - July 20, 2005 - Page 2

```
 1            THE CLERK:  Please be seated.  Case of the United
 2   States versus Michael Alcott, Criminal action, 04-10286 will now
 3   be heard before this Court.  Counsel please identify themselves
 4   for the record.
 5            MR. PIROZZOLO:  Good afternoon, your Honor, Jack
 6   Pirozzolo for the Government.
 7            MR. BARRON:  Kevin Barron for the Defendant Michael
 8   Alcott.
 9            THE COURT: Why are we here?
10            MR. BARRON:  A Rule 11.
11            THE COURT: Have you had a chance to speak to Mr. Alcott
12   about the waiver of the indictment?
13            MR. BARRON:  And it has been executed.
14            THE COURT:  What is your name for the record, sir?
15            THE DEFENDANT: Michael W. Alcott.
16            THE COURT:  And is this your signature on the waiver of
17   indictment?
18            THE DEFENDANT: Yes, it is.
19            THE COURT: Do you understand you have of a right to a
20   Grand Jury indictment?
21            THE DEFENDANT: Yes.
22            THE COURT: Do you understand that you are waiving that
23   right?
24            THE DEFENDANT: Yes.
25            THE COURT: Have you had a chance to discuss this with
```

USA v. Michael Alcott - July 20, 2005 - Page 3

```
 1    your lawyer?

 2              THE DEFENDANT: Yes, I have.

 3              THE COURT: And is your waiver, knowing, intelligent and

 4    voluntary?

 5              THE DEFENDANT: Yes.

 6              THE COURT:  All right, Mr. Alba.

 7              THE CLERK:  Mr. Michael Alcott as to count one, of the

 8    superseding information charging you with bank fraud, violation

 9    of TItle 18, United States Code, Section 1344, how do you plead,

10    guilty or not guilty?

11              THE DEFENDANT:  Guilty.

12              THE CLERK:  As to Counts 2 and 3 charging you with

13    false statements violation of TItle 18, United States Code,

14    Section 1014, how do you plead, guilty or not guilty?

15              THE DEFENDANT:  Guilty.

16              THE CLERK:  As to count four, charging you with Travel

17    Act, violation of Title 18, United States Code, Section 1952,

18    how do you plead, guilty or not guilty?

19              DEFENDANT:  Guilty.

20              THE CLERK:  Thank you.  Please take the witness stand,

21    judge?

22              THE COURT:  Continue.

23              THE CLERK:  Take the witness stand.

24              Counsel, you can accompany him.

25              (Defendant was sworn by the clerk.)
```

USA v. Michael Alcott - July 20, 2005 - Page 4

1                    **MICHAEL ALCOTT, Sworn**

2              THE COURT:  All right.  Do you understand that you are

3      now under oath and that if you answer any of my questions

4      falsely, you may later be prosecuted for perjury or making a

5      false statement?

6              THE DEFENDANT: Yes, your Honor.

7              THE COURT:  What is your full name?

8              THE DEFENDANT:  Michael W. Alcott.

9              THE COURT:  What is your age?

10             THE DEFENDANT: 44.

11             THE COURT:  How far did you go in school?

12             THE DEFENDANT: One year of college.

13             THE COURT:  Can you read and write?

14             THE DEFENDANT: Yes.

15             THE COURT:  Have you read the plea agreement?

16             THE DEFENDANT: Yes, your Honor.

17             THE COURT:  Have you read the superseding information?

18             THE DEFENDANT: Yes, I have.

19             THE COURT:  Have you been been treated for mental

20     illness or addiction to narcotic drugs?

21             THE DEFENDANT: Yes.

22             THE COURT:  Please tell me about it.

23             THE DEFENDANT: Currently on Prozac, Lithium and Inderal

24     for diagnosis of bipolar and obsessive compulsive disorders,

25     including addictions to alcohol and gambling.

USA v. Michael Alcott - July 20, 2005 - Page 5

1          THE COURT:  All right.  How do you feel?

2          THE DEFENDANT:  Fine.

3          THE COURT:' Are you getting the medications that you

4    think you should be getting?

5          THE DEFENDANT:  Yes, I am.

6          THE COURT:  And Mr. Barron, have you had a chance to

7    get to know Mr. Alcott well enough to know whether he seems well

8    to you?

9          MR. BARRON: Yes, he seems better.  I've had six

10   meetings in Plymouth before today and I think his condition has

11   stablized.

12         THE COURT:  Are you currently under the influence of

13   any controlled substances that are illegal or any medications

14   that you haven't described?

15         THE DEFENDANT:  No.

16         THE COURT:  Do you feel in any way as if your attorney

17   has pressured you into pleading guilt?

18         THE DEFENDANT: No.

19         THE COURT:  Have you been satisfied with your attorney?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Has anyone made any promises to you or

22   threats to you apart from the promises in the plea agreement?

23         THE DEFENDANT:  No.

24         THE COURT:  Has anyone promised you what my plea will

25   be?

1        THE DEFENDANT:  No.

2        THE COURT:  Excuse me, what my sentence will be?

3        THE DEFENDANT: No.

4        THE COURT:  Do you understand -- are you a citizen?

5        THE DEFENDANT: Yes.

6        THE COURT:  Do you understand a felony offense will

7    deprive you of certain important civil rights, such as the right

8    to vote, the right to hold public office, the right to serve on

9    a jury and the right to possess firearms?

10        THE DEFENDANT: Yes.

11        THE COURT:  Now, I am going to ask the government to

12    stand up and state the penalties that can be imposed on these

13    sentences.

14        These charges.

15        MR. PIROZZOLO:  Thank you, your Honor.  The maximum

16    penalties as to each of the four counts, count one, bank fraud,

17    imprisonment of not more than 30 years, a fine of not more than

18    one million or twice the gross gains to the defendant or gross

19    loss to the victim.  Restitution and/or forfeiture, special

20    assessment of $100 and supervised release of five years.

21        As to counts two and three, imprisonment for not more

22    than 30 years, a fine of not more than one million dollars or

23    twice the gross gains to the defendant or gross loss to the

24    victim, and restitution and/or forfeiture, and special

25    assessment of $100 and supervised release of five years.

1            As to count four, violation of Travel Act, 18 USC

2      Section 1952 with respect to the charges in the information, the

3      maximum penalty is imprisonment of not more than five years and

4      a fine of not more than $250,000, restitution and forfeiture and

5      special assessments of $100 and supervised release of not more

6      than five years.  Also, penalty enhancement provision that is

7      applicable here under 18 USC Section 3147 and provides for a

8      consecutive term of imprisonment of not more than ten years

9      because count 4 of the superseding information occured while on

10     pretrial release.

11            THE COURT:  Is there a plea agreement?

12            MR. PIROZZOLO:  There is, your Honor.

13            THE COURT:  Have you signed the plea agreement?

14            THE DEFENDANT: Yes.

15            THE COURT:  All right and let me -- did you give that

16     to me?  I think I handed it back with the waiver by accident.

17            (Pause).

18            Is there a -- what is the estimated sentencing length

19     that the government has calculated.

20            MR. PIROZZOLO:  Your Honor, there are a number of

21     disputed issues set forth in the plea agreement, so I hesitate

22     to give a sentencing range here.  I could go through the various

23     adjustments that are at issue with respect to the plea

24     agreement.  There is some complexity to what has been agreed to

25     here, your Honor.

USA v. Michael Alcott - July 20, 2005 - Page 8

1          THE COURT: Well, you know, when you hand these things

2     to me up here, I am trying to read it as I am going and I have

3     no idea what this says. Some sort of a waiver of appeal

4     provision?

5          MR. PIROZZOLO: There is, your Honor.

6          THE COURT: So let me just say -- why don't you state

7     for the record what it is.

8          MR. PIROZZOLO: The waiver of the appeal provision?

9          THE COURT: Yes.

10         MR. PIROZZOLO: Yes, your Honor. Under paragraph 7 of

11    the plea agreement, it states that the defendant is aware that

12    he has the right to challenge a sentence and guilty plea on

13    direct appeal. Defendant is also aware that he may in some

14    circumstances be able to argue his plea should be set aside or

15    his sentence set aside and a case on collateral charge, such as

16    pursuant to a motion under 28 USC in Section 2355, and states in

17    consideration and concessions made by the US Attorney in this

18    agreement defendant knowingly and voluntarily waives his right

19    to appeal the collateral challenge. Number one, defendant's

20    guilty plea and any other aspects of defendant's conviction,

21    including but not limited to any rulings on pretile motions or

22    any of the pretrial dispositions and motions and issues; two,

23    the imposition by the District Court of a sentence which does

24    not exceed that recommended by the US Attorney pursuant to this

25    agreement. It goes on: In consideration and concession --

1    THE COURT:  You don't have to read the whole -- have

2  you read it to him?

3    MR. BARRON:  Yes, I have, and the significant thing in

4  this actual provision, the bargained for provision, is that the

5  competency of counsel has been specifically excluded.  I will

6  not have a defendant sign a waiver right that -- where he waives

7  his right to challenge the competency of his attorney.

8    THE COURT:  You don't mean competent.  You mean

9  effective.

10    MR. BARRON:  Effective assistance of counsel.

11    THE COURT:  I am assuming you are competent.

12    MR. BARRON:  He has a Sixth Amedment challenge --

13    THE COURT:  Fair enough.

14    MR. BARRON:  And I say competency because it is a

15  broader issue.

16    THE COURT:  So let me, you know what is useful in the

17  future?  I know you are relatively new to each other and it is

18  such a complicated plea to give me a copy in advance.

19    MR. BARRON:  That is in part my fault.  It is a

20  somewhat complicated plea agreement and we've gone back and

21  forth and we had essentially a plea agreement but it is a

22  question of getting it up here.

23    THE COURT:  Even 15 minutes in advance is useful.  I am

24  just reading it as we are going.  Let me ask this.  So what is

25  your recommended sentence?

USA v. Michael Alcott - July 20, 2005 - Page 10

1          MR. PIROZZOLO:  Well, our recommended sentence is going

2     to be within the guidelines range as set forth under the various

3     calculations --

4          THE COURT:  I want to give him a sense of what at this

5     point, not what I am going to rule, but what you think that you

6     are going to recommend.

7          MR. BARRON:  Anywhere from 77 to 100 --

8          MR. PIROZZOLO:  It could be from 77 up to 137 months.

9          THE COURT:  Depending on how it is done.

10          Mr. PIROZZOLO:  It really depends on how it is

11     calculated and I hesitate to give a range because there are so

12     many open issues in the plea agreement, it could very well

13     change if you advise him there is a cap and probation comes back

14     --

15          THE COURT:  Don't worry.  I'm going to tell him about

16     that, but right now your preliminary -- your preliminary

17     estimates, puts it at bottom of 77 months?

18          Mr. PIROZZOLO:  Approximately, yes, your Honor.

19          THE COURT:  All right.  What are your preliminary

20     estimates?

21          MR. BARRON:  77 months would be the bottom estimate.

22     There would be questions about how much penalty he is to receive

23     grouping -- there may be some grouping issues.

24          THE COURT:  Sure.

25          MR. BARRON:  There may be issues about the enhancement,

1    but that is all, we've understood that --

2              THE COURT:  All right.

3              MR. BARRON:  Will also be a limited right to seek a

4    departure on mental health issues.

5              THE COURT:  Fine.

6              MR. BARRON: That will be preserved.

7              THE COURT:  Do you understand that is going to be a

8    complicated sentencing and what I am going to do is send it to

9    the probation office, which will recommend a sentencing

10   guideline range, and then both of these attorneys are telling me

11   that there are many moving parts and they are not sure exactly

12   where the sentence will end up but -- and that we'll have a

13   whole hearing about that and the government can object and

14   counsel can object and I will set a sentencing guideline range.

15   Do you understand that?

16             THE DEFENDANT:  Yes, I do, your Honor.

17             THE COURT:  And then what I am going to do because it

18   is advisory, I will consider attorney's request that I go down

19   from that range because of mental health issues.  Do you

20   understand that?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  He has limited himself to asking for that,

23   is that right?

24             MR. BARRON:  Well, that's what the bargain ended up to

25   be with Mr. Pirozzolo.

1          THE COURT:  The bargain he is going to push hard for

2     variance or departure on mental health issues.  Do you

3     understand that?

4          THE DEFENDANT: Yes, your Honor.

5          THE COURT:  And at the conclusion of all that, I make

6     an  assessment whether the sentence is reasonable because the

7     guidelines are only advisory.  Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.  So this is going to be

10    relatively messy, but under both sides' calculations, it looks

11    likely that the bottom end of the guideline range will be in the

12    vicinity of 77 months.  Do you understand that?

13         THE DEFENDANT: Yes.

14         THE COURT:  All right.  Is that accurately stating it?

15         Mr. PIROZZOLO:  That's correct.

16         THE COURT:  You have waived most of your rights to

17    appeal but there are are some residual rights permitted under

18    paragraph 7.  Have you had a chance to discuss that with your

19    attorney?

20         THE DEFENDANT:  Yes.

21         THE COURT:  All right.  I think that would be better

22    than my trying to synopsize it at this point.  Now, what I am

23    going to do is tell you that apart from whatever you've waived,

24    you will have the right to appeal certain sentencing issues if

25    you think I am in error, but you cannot withdraw your guilty

USA v. Michael Alcott - July 20, 2005 - Page 13

1    plea.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  Now, going to the rights that

4    you have given up by pleading guilty, do you understand you have

5    a right to an attorney at trial?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand you have a right to a

8    trial?

9              THE DEFENDANT: Yes.

10             THE COURT:  Do you understand you have of a right to

11   trial by jury?

12             THE DEFENDANT: Yes.

13             THE COURT: And 12 citizens chosen at random from the

14   community to look at the evidence in this case and decide

15   whether the government has proven its case beyond a reasonable

16   doubt.  You understand you've given that up?

17             THE DEFENDANT:  Yes.

18             THE COURT:  You understand the jury has to decide that

19   unanimously, 12 out of 12?

20             THE DEFENDANT: Yes.

21             THE COURT: Understand the government always has the

22   burden of proof beyond a reasonable doubt and never shifts to

23   you?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Understand you're giving up this

1  presumption of innocence?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Understand there is a privilege against

4  self-incrimination which means do you not have to testify

5  against yourself.

6          THE DEFENDANT:  Yes.

7          THE COURT:  On the other hand, do you understand that

8  you would have to right to testify on your own behalf if you

9  chose to do so?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand you have the right to

12  confront, to see all witness against you and to cross-examine

13  them?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And on the other hand you have a right to

16  subpoena witness on your own behalf?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And understanding all these extremely

19  important constitutional rights, do you still want to plead

20  guilty?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Now, there is quite a bit here, so I

23  basically have been following this case, as we all know, over

24  time.  I have basically lumped together all the charges as I

25  understand it and it is all in the superseding information; is

1    that right?

2         MR. PIROZZOLO:  That's correct, your Honor.

3         THE COURT:  I think for ease of taking this plea, I

4    suggest what do you is you start with the -- each cluster, and

5    I'll ask him if he pleads guilty to that because we have bank

6    fraud, obstruction and we have the Travel Act; and I'll add for

7    you that I'm not sure I have ever taken a plea to a Travel Act,

8    so it would be useful me a little bit to have your understanding

9    of what the elements of that are.

10        Mr. PIROZZOLO:  I will do that, your Honor.

11        Starting with the bank fraud there are three counts

12   relevant to the bank fraud.  There is one bank fraud count under

13   Section 1344 and there are two false statements in connection

14   with loan applications and counts two and three relate to those.

15   The factual basis as to those charges is really offered as a

16   group are as follows:  Mr. Alcott was the founder and president

17   of Ark Associates which did business as Accounting Recruiters

18   International.

19        On or about 2000 Mr. Alcott and Ark Associates entered

20   into a relationship with South Shore Savings Bank. He

21   established a line of credit.  The line of credit was initially

22   established at $500,000.  Over time credit increased up to 2.5

23   million dollars.  In order to induce the bank to increase the

24   line of credit, Mr. Alcott submitted false and fraudulent

25   financial statements to South Shore Savings Bank.  The false and

1    fraudulent statements included statements for the fiscal years

2    2000, 2001 and 2002.  With respect to the 2002 statement, Mr.

3    Alcott was required to estimate a financial statement that was

4    audited by and independent accounting firm.  Previously he had

5    only been required to supply a reviewed statement which is a

6    lower level of scrutiny.  With respect to the audited financial

7    statement, he was unable to obtain an audited financial

8    statement and instead submitted a false and fraudulent audited

9    financial statement with a false letter purporting to be from an

10   accountant Mr. David P. Kane of an entity called KPM Associates.

11          KPM actually is a real accounting firm.  David Kane,

12   however, was a fictitious person.  Eventually it was discovered

13   that in fact Mr. Kane did not exist; and South Shore when it

14   learned of the fact, foreclosed on a line of credit.  However,

15   at that time the balance, the outstanding balance was 2.496

16   million dollars.  Shortly before -- that is counts one and two.

17   Shortly before South Shore discontinued --

18          THE COURT:  Which -- you are still staying on the same

19   cluster?

20          Mr. PIROZZOLO:  I am.  Thank you.  Count 3 relates to

21   an event that forced South Shore to foreclose on the line of

22   credit.  Shortly before South Shore called the loan, Mr. Alcott

23   had submitted an application to Boston Private Bank and Trust

24   Company for a 3.5 million dollar line of credit.  And he

25   provided the same false and fraudulent financial statements with

1    the fabricated letter from David Kane also to Boston Private

2    Bank and Trust Company.  He never obtained the loan after South

3    Shore called the loan.  Boston Private Bank was notified and

4    they did not extend the credit.  However, there is a false

5    statement in connection with the loan application and that

6    serves as the basis for count 3.

7         In the information there are set forth acts of

8    obstruction of justice --

9         THE COURT:  Those relating to the bank fraud?

10        Mr. PIROZZOLO:  They do; and if I could just explain,

11   your Honor, they are not separately charged.  They are not

12   separately charged as separate counts in the information.

13   Rather they are set forth in the information because they will

14   be relevant to an obstruction of justice enhancement we

15   anticipate.

16        THE COURT:  I don't see why you need go through those

17   now.  Do you agree?

18        MR. BARRON:  I agree.

19        THE COURT:  All right.

20        Mr. PIROZZOLO:  Your Honor --

21        THE COURT:  Not done with the bank fraud?

22        Mr. PIROZZOLO:  I am finished -- I just want to just

23   alert you that alleged in the information are two separate

24   instances of obstruction.  There is the first obstruction which

25   relates to the letter that you received and a second which the

1    government contends is the second instance --

2            THE COURT:  Those are separate counts?

3            Mr. PIROZZOLO:  They are not counts.  They are charged

4    and in the information.

5            THE COURT:  Why do I need to take them?  Under Blakely

6    do you want to plead to them?

7            MR. BARRON:  I don't believe that's necessary.  We're

8    simply admitting to the factual allegations and the AUSA I

9    believe is proceeding correctly, as I understand Booker, as it

10   looks back at Blakely, through a lens that he should be

11   mentioning at least some of these facts that could be -- could

12   possibly be viewed as the need for some kind of separate charge

13   and being admitted as facts; and in the context of the plea

14   agreement, that's all that is necessary -- or in context of Rule

15   11 I should say.

16           THE COURT:  Do you want him to plead to the

17   obstructions?

18           Mr. PIROZZOLO:  Yes, although they are not separately

19   charged counts.

20           THE COURT:  I thought what that is what Booker said I

21   didn't have to do.

22           MR. BARRON:  I agree with your Honor.

23           Mr. PIROZZOLO:  I do want to make clear, however, here,

24   what are the components of the information so there is no

25   question what is the component of the document that he is

1  pleading to, your Honor.

2       MR. BARRON:  Admitting to.

3       Mr. PIROZZOLO:  Admitting to, excuse me.

4       THE COURT:  Well, I am -- right now I am just going to

5  take the counts.  Just not going -- all right.  Since you've

6  read the superseding information, I am moving right onto count

7  1.

8       Do you plead guilty to at least on or about July 13th,

9  2000 to on or about July 1, 2003, that you did knowingly execute

10 and attempt to execute a scheme and artifice to defraud South

11 Shore Savings Bank, a financial institution in violation of 18

12 USC Section 1344(1)?

13      THE DEFENDANT:  Yes, your Honor.

14      THE COURT:  Do you plead guilty knowingly, freely and

15 voluntarily?

16      THE DEFENDANT:  Yes.

17      THE COURT:  Did you know that letter saying that the

18 statement was audited was a fraud?

19      THE DEFENDANT: Yes.

20      THE COURT:  With respect to count 2, do you plead

21 guilty to on or about May 2003 that you did knowingly make a

22 false statement for the purpose of influencing South Shore

23 Savings Bank, an institution the accounts of which are insured

24 by the Federal Deposit Insurance Corporation upon a loan and any

25 change and extension of a loan by renewal, deferment of action

1   and otherwise in the acceptance, release and substitution of

2   security therefore in violation of 18 USC Section 1014, do you

3   plead guilty to that?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  And with respect to count 3, do you plead

6   guilty to on or about June 3rd, 2003, that you did knowingly

7   make a false statement for the purpose of influencing Boston

8   Private Bank and Trust Company, an institution the accounts of

9   which are insured by the Federal Deposit Insurance Corporation

10  upon an application for credit in violation of 18 USC Section

11  1014?  Do you plead guilty to that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Knowingly, freely and voluntarily.  Now do

14  you disagree with any of the obstruction acts or do you want to

15  contest those at the sentencing?

16          MR. BARRON:  There is contest to the second obstruction

17  act at the sentencing.

18          THE COURT:  All right.  As I understand that, I decide

19  that and will decide it by a preponderance of the evidence, I

20  will find the guideline range.  I will address the departure and

21  separately decide whether or not that is a reasonable sentence

22  because they are advisory.  So I don't need a plea to the

23  obstructions if they are not separate counts and separate

24  charges.

25          Now, move on to the Travel Act which is count 4.

1            And in fairness to you, I understand different judges

2    are dealing with this differently, but I would say the vast

3    majority of judges have put a stake in the ground.  It is a

4    preponderance standard.  And the Circuits.

5            Mr. PIROZZOLO:  Okay.  Thank you, your Honor.  With

6    respect to count 4, which is the Travel Act violation, I will

7    talk first about the factual basis and then I'll address the

8    elements of the offense.

9            The Government would prove that in or about February of

10   2005 Mr. Alcott engaged in a scheme to extort $150,000 from a

11   California man who works as a doctor.  More particularly, the

12   Government would show that Alcott threatened to disclose the

13   doctor's sexual relationship with a woman who had been a

14   prostitute if the doctor did not pay him $150,000.

15           Although the victim and Mr. Alcott didn't know each

16   other, they had each been clients of this woman who had acted as

17   an escort; and in February, 2005, Mr. Alcott sent by Federal

18   Express to the doctor's work address a letter which represented,

19   under a pseudonym, Philip Edwards, from Boston, that he had been

20   hired as a private investigator and had come to realize that his

21   client was going to use information that he had gathered against

22   the doctor to ruin him.

23           The letter goes on to state various things including

24   that he has pictures from adult websites showing the escort and

25   that he has proof that the doctor had met the escort while

1    visiting his daughter.  And he went on to say that the

2    information that he had could bring him down and that the bottom

3    line is that he spent a lot of time tracking down the dirt in

4    people's lives and then see it used to destroy them.  He then

5    said that if you pay me more than my client, then only make this

6    information disappear.  I'll share some useful information with

7    you.

8              Subsequently and subsequent communications which were

9    done via e-mail, Mr. Alcott requested that $150,000 retainer be

10   sent to a bank account that Mr. Alcott had set up in Atlanta and

11   there were, in addition to the e-mails and the Federal Express,

12   there was also interstate telephone calls that were placed to

13   the doctor's residence and cell phone.

14             In March of 2005 -- well at the end of 2005, the doctor

15   informed the escort that he was going to report the incident to

16   the police and then the communication ceased.  Subsequently in

17   March 2005 the escort, the woman, forwarded to the doctor an

18   e-mail from Alcott that had said that he had been in love with

19   the escort and he hoped to start a life together and explain the

20   extortionate scheme, being under federal indictment and attached

21   a press release that had announced bank fraud charges being made

22   against him.

23             Now, with respect to the precise charge, the Travel Act

24   provides, whoever travels in interstate or foreign commerce, or

25   uses the mail ior any facility of interstate foreign commerce

1    with the intent to promote, manage, establish, carry on,

2    facilitate the promotion, management, establishment or carrying

3    on of any unlawful activity; and the term unlawful activity

4    under the Travel Act includes extortion in violation of the laws

5    of the state in which committed; and in this case the state in

6    which the act was committed was Massachusetts.  Massachusetts

7    has a statute Mass. General Laws Chapter 265, Section 25, which

8    criminalizes extortion and under Commonwealth versus Miller,

9    which is an SJC decision, the SJC held that threats to expose a

10   person's sexual activities or sexual practices comes within the

11   scope of Chapter 265, Section 25.

12          THE COURT:  Thank you.  Anything you disagree with

13   about that?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Anything you disagree with any of the

16   statements that the prosecutor has made so far about the

17   evidence?

18          THE DEFENDANT: No.

19          THE COURT:  So I'm not going to read the whole Travel

20   Act.  Do you plead guilty to in or about February 2005 that you

21   did knowingly travel in interstate commerce and use the mails

22   and the facility in interstate commerce with the intent to

23   promote, manage, establish, carry on or facilitate the

24   promotion, management, establishment or carrying on of an

25   unlawful activity, to wit, extortion, in violation of Mass.

1    General Laws, Chapter 265, Section 25 and in violation of 18 USC

2    Section 1952.  Do you plead guilty to that?

3             THE DEFENDANT: Yes.

4             THE COURT:  And did you commit this offense while you

5    were under pretrial release?

6             THE DEFENDANT: Yes.

7             THE COURT:  Do you plead guilty knowingly, freely and

8    voluntarily?

9             THE DEFENDANT: Yes.

10            THE COURT:  All right.  Do you have any other questions

11   for your attorney or me because I am about to accept this plea?

12            THE DEFENDANT:  No.

13            THE COURT:  I find your plea is knowing and voluntary

14   supported by independent basis in fact and has the essential

15   elements and I accept it.  It sounds like this is a messy

16   sentencing and I should probably give it at least an hour or

17   more.

18            MR. PIROZZOLO:  I would say at least that, your Honor.

19            THE COURT:  What are you thinking?

20            MR. BARRON:  Two a half.  I think it could take an

21   afternoon.

22            THE COURT:  Am I likely to hear evidence?  What am I

23   likely to hear?

24            MR. PIROZZOLO:  There are some legal issues that have

25   been raised by the plea and there may be some evidentiary issues

USA v. Michael Alcott - July 20, 2005 - Page 25

1  that we may need.  There is an expected motion regarding mental

2  health and that may take some time.

3      MR. BARRON:  That is why I would say more than an hour

4  possibly if there is a need to take the testimony of an

5  independent forensic psychologist or forensic psychiatrist.  The

6  defense would offer one and possible the government possibly

7  also.  So --

8      THE COURT:  Block off an afternoon.

9      MR. BARRON:  I will inform the court if it looks like

10  we are not going to have an evidentiary hearing and we may be

11  deciding it on papers.

12      THE CLERK:  Sentencing would be October 21st at 2 PM.

13      MR. BARRON:  Yes, your Honor.

14      THE COURT:  Okay.

15      (Court remained in session on other matters at 3:51

16  PM.)

17              C E R T I F I C A T I O N

18      I, Nancy L. Eaton, certify that the foregoing is a correct

19  transcript from the record of proceedings in the above-entitled

20  matter.

21  _____        _____

22  Nancy L. Eaton, Court Reporter      November 30, 2006

23

24

25