# ATTACHMENT E

## AFFIDAVIT OF SCOTT A. ROBBINS

I, Scott A. Robbins, being duly sworn, depose and say:

1. I am a Special Agent for the Federal Bureau of Investigation (FBI). I have been employed by the FBI as an agent since April 1995. During the course of my employment with the FBI, I have received specialized training in the investigation and prosecution of white collar crimes. From August 1995 through December 2007 I was assigned to the investigation of financial crimes and various fraudulent schemes, among other offenses. From January 2008 through the present, I have been assigned to a technical support unit within the FBI, Boston office.

2. I submit this affidavit in connection with the petition under 28 U.S.C. § 2255 (the "Petition") of Michael W. Alcott ("Alcott"), the defendant in United States v. Michael W. Alcott, 04-cr-10286-PBS (the "Original Case"). The information set forth in this affidavit is based on my personal knowledge.

3. In 2004, Alcott was charged in the Original Case with a violation of the bank fraud statute, 18 U.S.C. § 1344, for his participation in a $2.5 million bank fraud.

4. In March 2005, while the Original Case was pending, I was contacted by the FBI San Diego, California office. Special Agent Frank Teixeira ("Teixeira") informed me that Alcott was under investigation for engaging in a scheme to extort a California doctor for $150,000. Teixeira had opened a case on the matter on February 11, 2005.

5. The Special Agent supplied me with a copy of a letter Alcott sent via Federal Express on or about February 7, 2005 to the doctor. Alcott sent the letter using the pseudonym "Phillip Edwards, DDS." The letter threatened to disclose the doctor's relationship with a woman, Toni Spain ("Spain"), whom the doctor had met through an escort service. Among other things, the letter stated that: "Suffice it to say that the information that I have could bring you down. Think about the humiliation with your parents (Bill & Joann), your children and especially your colleagues and patients if this seedy side of your life comes out, and trust me when I tell you that the above is just a sampling of what I have gathered." The letter demands that the doctor pay "to make this information disappear," urging the doctor to "think long and hard about how long and hard you have worked to establish your reputation and just how quickly it could be destroyed."

6. In a series of e-mails following the letter, Alcott demanded a payment of $150,000 to be deposited into a bank account Alcott had set up in Atlanta. Those e-mails

continued to threaten the doctor with the extortion scheme. Alcott sent them from February 8, 2005 through February 16, 2005.

7. The emails show that Alcott continued to make threats after the doctor informed Alcott (on February 9, 2005 at 6:02 p.m.) that he had contacted a special agent in the FBI's San Diego field office.

8. The e-mails sent from February 8, 2005 through February 16, 2005 were attached to an affidavit I signed dated April 28, 2005 (the "Affidavit"). That affidavit was submitted with the government's Motion for Modification of Release Conditions, also dated April 28, 2005.

9. Also attached to the Affidavit, was an e-mail the doctor forwarded to the FBI on March 23, 2005. That e-mail, dated March 22, 2005, was sent from Spain to the doctor. It attached an e-mail from Alcott dated March 18, 2005 in which he apologized for hurting Spain by sending the threatening letters. In the e-mail Alcott claimed he did it because of his need for money due to his bank fraud indictment and his cancer. He also said he did it because he "despised" the doctor. In that e-mail he also said that "I would never hurt you or your family (as evidence by my backing off the minute I knew I was causing trouble for you with Ken.)."

10. I do not recall seeing or being otherwise made aware that Alcott had sent an e-mail during the period of February 7, 2005 through February 16, 2005 abandoning his scheme or telling the doctor, in words or substance, to "Forget it" or "Have a nice life" or "I will not bother you ever again." I do not recall seeing or otherwise being made aware of any such e-mail from Alcott that was sent "before any involvement of authorities," as Alcott alleges in the Petition (p. 16). I do not recall seeing or otherwise being made aware of any e-mail from Alcott saying "Forget it" or words to that effect, except to the extent that the March 18, 2005 e-mail attached the Affidavit states Alcott's assertion that he had abandoned the scheme.

11. In February 2008, I was asked to determine whether any such e-mail saying "Forget it" or "Have a nice life" or "I will not bother you ever again" (or words to that effect) was in the FBI files in either Boston or San Diego, the two offices that handled the extortion investigation. I made inquiries in both Boston and San Diego, and was informed that no such e-mail exists in the FBI files. The Alcott extortion files were closed in 2007 and do not contain any e-mails of the type or nature Alcott claims.

12. On or about March 5, 2008, I spoke with SA Teixeira, who was responsible for the investigation in San Diego and was the principal FBI contact person with the doctor. He does not recall seeing any e-mail sent by Alcott to the doctor telling the doctor in words or substance to "Forget it" or "Have a nice life" or "I will not bother you ever again."

Subscribed and sworn to under the penalties of perjury.

*[signature]*
Scott A. Robbins
Special Agent
Federal Bureau of Investigation

3