UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
MICHAEL W. ALCOTT,             )
          Petitioner,          )
                               )
          v.                   )  CRIMINAL ACTION NO. 04-cr-10286-PBS
                               )
UNITED STATES OF AMERICA,      )
          Respondent.          )
_____)
```

**MEMORANDUM AND ORDER**

September 1, 2009

Saris, U.S.D.J.

## I. **INTRODUCTION**

Pro se Petitioner Michael W. Alcott has filed this habeas petition under 28 U.S.C. § 2255 claiming, among other things, that he received ineffective assistance of counsel during the pleading and sentencing processes.  He seeks to be re-sentenced to a term of seventy months.  After review of the briefs, the Court **DENIES** the petition.

## II. **BACKGROUND**

On September 16, 2004, Alcott was indicted on charges of bank fraud (one count) and making false statements to a federally insured financial institution (two counts).  While on pretrial release, on February 8, 2005, Alcott sent a letter threatening to disclose a California doctor's sexual relationship with a former prostitute if the doctor refused to pay him $150,000.  He also sent four threatening e-mails, the last one on February 16, 2005,

and made a series of threatening phone calls to the doctor in
this time period.  On June 19, 2005, the United States filed a
Superseding Information adding to the indictment one count
alleging that, in conducting his blackmail scheme, Alcott had
violated the Travel Act, 18 U.S.C. § 1952.  The Superseding
Information also charged that the Travel Act violation triggered
a penalty enhancement under 18 U.S.C. § 3147 because it was
committed while on pretrial release.  From June 2004 through May
2005, Alcott (falsely) maintained to his attorney and the court
to be suffering from, and receiving treatment for, terminal
cancer.  To perpetuate this falsehood, Alcott fabricated a letter
purporting to be from Anthony L. Zeitman, MD, and stating that
Alcott had "Advanced Stage Prostate Cancer" and "Secondary Bone
Cancer." (Docket No. 19.)  The letter stated that Alcott's
prognosis was "a 0% survival rate beyond 2 years" and added the
"personal opinion that introducing any further stress into Mr.
Alcott's life will only serve to lessen the amount of quality
time that he has left." (Id.)  Alcott also submitted a treatment
schedule to the Court indicating that he was undergoing treatment
several days a week at Massachusetts General Hospital's Cancer
Center.  It was later discovered that Alcott was not ill and had
fabricated the letter.

On July 20, 2005, Alcott entered into a plea agreement with
the United States Attorney, pleading guilty to the bank fraud

charges and the extortion scheme.   In Paragraph Seven of the
agreement, Alcott waived his rights to appeal or collaterally
challenge "(1) Defendant's guilty plea and any other aspect of
Defendant's conviction . . . and (2) [t]he imposition by the
District Court of a sentence which does not exceed that being
recommended by the U.S. Attorney pursuant to this agreement."
("Agreement" [Docket No. 35].)   The waiver contained two
exceptions: (1) an appeal based on new legal principles in the
First Circuit or Supreme Court decided after the agreement; and
(2) an appeal based on an argument that the district court
misunderstood the scope of its legal authority to depart from the
applicable Sentencing Guidelines range.   (Id.)   Alcott reserved
only one ground, his psychiatric condition, on which to seek
downward departure from the guidelines.   (Id. at ¶ 3.)

     At the plea colloquy, counsel orally preserved Alcott's
right to mount a Sixth Amendment challenge based on ineffective
assistance of counsel:

> MR. BARRON: [T]he significant thing in this
> actual provision, the bargained for
> provision, is that the competency of counsel
> has been specifically excluded.  I will not
> have a defendant sign a waiver right that --
> where he waives his right to challenge the
> competency of his attorney.
>
> THE COURT: You don't mean competent.  You
> mean effective.
>
> MR. BARRON: Effective assistance of counsel.

(Hr'g Tr. 9, July 20, 2005 [Docket No. 91-3]) ("Plea Hr'g. Tr.").

-3-

After questioning Alcott as to his understanding of the agreement and willingness to enter a guilty plea, this Court accepted his plea after finding it to be knowing, voluntary, supported by an independent basis in fact, and containing all of the necessary elements. (<u>Id.</u> at 24.)

Sentencing proved to be a complicated matter, involving extensive briefing and two days of hearing. The Court found that Alcott was a career offender with a total offense level 23 and criminal history category of VI. The advisory guidelines range was 92 to 115 months imprisonment. Both sides sought departures. The government sought a 120-month sentence, while Defendant asked for 48 months. The Court sentenced him to the lowest end of the guidelines range to a period of 92 months incarceration, five years of supervised release, and a restitution payment of $2,032,345.60 to South Shore Savings Bank.

Alcott appealed. The First Circuit rejected the appeal, holding that he had waived his right to challenge the sentence on the proffered grounds. (<u>See</u> Mandate of United States Court of Appeals for the First Circuit, No. 06-1756, Feb. 9, 2007 [Docket No. 83] ("Mandate").) The Court found that neither of the two exceptions within the waiver applied, noting that there is "no indication that the district court actually desired to depart downward but considered itself powerless to do so" and declaring the recent Supreme Court case cited by Alcott to be "inapposite."

(<u>Id.</u>)  Stating that "[e]nforcing the waiver would not result in a
miscarriage of justice," the First Circuit affirmed the judgment
of the district court.  (<u>Id.</u>)  In addition, without issuing a
definitive ruling on the issue, the First Circuit addressed
Alcott's argument that his Travel Act violation should not have
been considered a "crime of violence":

> [D]efendant's admitted manner of violating
> the Travel Act — making extortionate threats
> to reputation — seems to us indistinguishable
> from generic extortion, a 'crime of violence'
> listed by name in U.S.S.G. §4B1.2(a)(2).
> '[T]he wording of the guideline tells us
> unequivocally that extortion, <u>by its nature</u>,
> should be classified as a crime of violence.'
> <u>United States v. DeLuca,</u> 17 F.3d 6, 8 (1st
> Cir. 1994); <u>cf.</u> <u>United States v. Winter</u>, 22
> F.3d 15, 18-21 (1st Cir. 1994) (no admission
> or jury finding of conduct that can be
> equated with an enumerated 'crime of
> violence').  In light of defendant's
> admissions, <u>Shepard v. United States</u>, 544
> U.S. 13 (2005), is simply inapposite.

(<u>Id.</u>)

### III. <u>DISCUSSION</u>

A defendant may seek post-conviction relief from his
sentence under 28 U.S.C. § 2255 in four instances: if the
sentence "(1) was imposed in violation of the Constitution, or
(2) was imposed by a court that lacked jurisdiction, or (3)
exceeded the statutory maximum, or (4) was otherwise subject to
collateral attack."  <u>David v. United States</u>, 134 F.3d 470, 474
(1st Cir. 1998) (citing <u>Hill v. United States</u>, 368 U.S. 424, 426-
27 (1962) (construing § 2255)).

**A. Waived Claims**

Alcott brings this petition on four grounds: (1) that the Court erred in calculating the points concerning his criminal history; (2) that the United States violated the strictures of Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose an allegedly exculpatory e-mail; (3) that the Court erred in concluding that the extortion underlying the Travel Act violation was a "crime of violence"; and (4) that he suffered from ineffective assistance of counsel.  The first three grounds cannot sustain a successful petition in this case, as Alcott has waived the right to collaterally challenge his sentence on each basis.

Alcott's plea agreement included a waiver of his right to appeal or collaterally challenge his "guilty plea and any other aspect of [his] conviction . . . and . . . [t]he imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney pursuant to this agreement." (Agreement ¶ 7.)  The Court imposed a sentence of 92 months, which was well below the 120-month sentence recommendation by the government.  The sentence is therefore within the scope of the waiver.

The waiver did contain two exceptions, allowing Alcott to: (1) appeal based on new legal principles in the First Circuit or Supreme Court decided after the agreement; and (2) appeal based on an argument that the district court misunderstood the scope of

its legal authority to depart from the applicable guidelines
range.  (Id.)  Neither exception is applicable here.  As the
First Circuit has recognized, this Court did not impose a
sentence at the absolute low-end of the guidelines range because
it believed that, under the law, it could go no lower.  Rather,
this Court repeatedly emphasized that it was Alcott's conduct
during his pretrial release, particularly the blackmail scheme
and the brazen misrepresentation as to his health made to the
Court (and counsel), that convinced this Court that a downward
departure was not warranted and that an incarceration of 92
months was "fair and appropriate."  (Hr'g Tr. 60-61, March 3,
2006 [Docket No. 91-4,5] ("Sentencing Hr'g. Tr.").)  The Court
stated:

> [W]hile I do believe I have the authority on
> my own to downwardly depart, and I might
> otherwise have been tempted to because this
> was a nonviolent blackmail, and I actually
> don't agree with that First Circuit case –
> that's the First Circuit case – and it also
> is supported by a Guideline, I am going to
> find that he is a career offender based on
> the extortion/blackmail.  And given
> everything else in his record – in
> particular, the lie and the blackmail
> occurred while on pretrial supervised release
> – I'm not going to downwardly depart.

(Id. at 35-36.)

As to Alcott's argument that the case of Shepard v. United
States, 544 U.S. 13 (2005), constitutes a "new legal principle"
upon which he can properly base an appeal, the First Circuit has
already rejected this contention.  (See Mandate [Docket No. 83].)

Moreover, as the First Circuit also held, this waiver exhibits all of the qualities of a valid waiver and its enforcement "would not result in a miscarriage of justice." (Id.); see United States v. Newbert, 504 F.3d 180, 182 (1st Cir. 2007) (stating that, following the lead of the United States Supreme Court, the First Circuit will generally enforce "knowing and voluntary waivers by defendants in plea agreements of their rights to appeal" and their right to collaterally attack their convictions through habeas proceedings "except when it would work a miscarriage of justice") (citing United States v. Teeter, 257 F.3d 14, 23-25 (1st Cir. 2001) (holding that plea-agreement waivers of rights to appeal are "presumptively valid" and setting forth test for determining whether a particular waiver should be enforced)).  "While the government may not coerce a defendant into an involuntary plea, the government has wide latitude in how it reaches a plea" and may insist, as a condition of the plea, that the defendant waive all appellate rights and any rights under Brady v. Maryland, 373 U.S. 83 (1963).  United States v. Yeje-Cabrera, 430 F.3d 1, 24 (1st Cir. 2005); Vega Cosme v. United States, 2009 WL 1059788, *5 n.12 (D.P.R. Mar. 2, 2009).

Accordingly, but for his ineffective assistance of counsel claim (a claim the government concedes is procedurally viable), each of Alcott's claims in this petition is barred by his knowing and voluntary waiver in the plea agreement.

## B. Ineffective Assistance of Counsel

Alcott's one remaining claim – ineffective assistance of

counsel – has three distinct elements.  First, Alcott argues that his counsel failed to fully inform him of the ramifications of his plea agreement, particularly the possibility that his extortion-based Travel Act violation would be considered a crime of violence and that he would be deemed a career offender in the sentencing process.  Second, Alcott contends that his counsel erred by failing to seek discovery from the government regarding an alleged exculpatory e-mail.  Third, Alcott insists that his counsel failed to adequately present evidence of his psychiatric condition to the Court.

To succeed on an ineffective assistance claim, the petitioner "must establish that (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 689, 694 (1984)).  A failure of proof on either prong defeats an ineffective assistance of counsel claim.  See Malone v. Clarke, 536 F.3d 54, 64 (1st Cir. 2008) ("[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") (internal quotation marks omitted).  This two-part test is applicable to ineffective assistance claims arising out

of both the plea and sentencing processes.  See Bell v. Cone, 535
U.S. 685, 697-98 (2002) (holding that a challenge to counsel's
performance during sentencing is governed by the Strickland
standard); Hill v. Lockhart, 474 U.S. 52, 57-58 (1985) (holding
that the two-part Strickland test is "applicable to ineffective-
assistance claims arising out of the plea process").

The second prong of the Strickland test requires a
petitioner to demonstrate actual prejudice from the alleged
mistakes of counsel.  Rice v. Hall, 564 F.3d 523, 525 (1st Cir.
2009) (describing the second prong as a "prejudice requirement"
that has been "variously stated").  In the context of an
ineffective assistance claim involving a guilty plea, this second
"prejudice" prong of the Strickland standard requires a defendant
to "show that there is a reasonable probability that, but for
counsel's errors, he would not have pleaded guilty and would have
insisted on going to trial."  Hill, 474 U.S. at 59.

1.  Crime of Violence and Career Offender Status

Though petitioner raises several complaints regarding the
counsel he received when deciding to plead guilty, the gist of
his argument is that his counsel failed to advise him that, due
to his state court convictions and/or the potential for his
Travel Act violation to be deemed a "crime of violence," he could
be considered a career offender and thus subject to a guidelines
range with a low-end of 92 months.

First, Alcott contends that he did not understand that, by

-10-

signing the plea agreement, he was waiving his right to
collaterally challenge his previous state court convictions that
served as predicates for his career offender status.  Had he
understood this to be the case, Alcott maintains that he would
not have signed the plea agreement.  Alcott also complains that
his counsel unreasonably "waffled" on the question of whether to
challenge such convictions, ultimately declining to represent Mr.
Alcott in that process.  This Court need not explore the strength
or veracity of these assertions, however, because Alcott cannot
satisfy the second "prejudice" prong of the Strickland test.
While the instant motion was pending, the state court denied
Alcott's motion to vacate his 1987 guilty plea to armed robbery.
(See Docket No. 101.)  Alcott has not advised this Court that he
has filed any other motions to vacate in the state courts.
Accordingly, he has demonstrated no prejudice as to this alleged
defect in representation.

Alcott also contends that his attorney failed to adequately
explain to him that he could qualify as a career offender.
Alcott maintains that he was shocked when the presentence report
listed him as a career offender and states that his attorney had
told him that, because none of his past crimes were violent in
nature, he would not be deemed a career offender.  He also
indicates that his attorney informed him that the government was
not going to press the notion that extortion could qualify as a

"crime of violence" in Alcott's case.[1]  Again, this Court can
dispose of this claim without delving into what was said between
Alcott and his counsel and whether the counsel's advice and
actions were objectively reasonable.  It is well-established in
the First Circuit that "an inaccurate prediction about sentencing
will generally not alone be sufficient to sustain a claim of
ineffective assistance of counsel."  Knight v. United States, 37
F.3d 769, 775 (1st Cir. 1994); Guerrero v United States, No. 07-
430L, 2008 WL 979802, *3 (D.R.I. April 9, 2008) (describing the
proposition as "long-held" in the First Circuit).

Moreover, the First Circuit has previously rejected a
petitioner's claim that an attorney's mistaken assurance that
there was "no way" the petitioner would be sentenced as a career
offender constituted ineffective assistance of counsel.  See
United States v. LaBonte, 70 F.3d 1396, 1413-14 (1st Cir. 1995)
(applying the Strickland standard and holding that, even under a
"generous reading," the petitioner's claim must fail because he
did not allege any "cognizable prejudice"), rev'd on other

---

[1] As noted above, Mr. Alcott also challenges the substantive
finding that the extortion violation under the Travel Act
constituted a "crime of violence."  This claim is procedurally
barred.  In addition, while not explicitly ruling on the issue,
the First Circuit indicated its position on the question when it
stated that the "defendant's admitted manner of violating the
Travel Act . . . seems to us indistinguishable from generic
extortion, a 'crime of violence' listed by name in [the
Sentencing Guidelines]."  (Mandate [Docket No. 83].)  The First
Circuit also rejected Alcott's contention that Shepard v. United
States, 544 U.S. 13 (2005), was relevant to the "crime of
violence" question in his case.  (Id.).

grounds, 520 U.S. 751 (1997).  The First Circuit emphasized that the petitioner in LaBonte was well aware of the maximum sentence he was facing and that, at the plea colloquy, the Court explained to petitioner that his sentence could not be calculated with certitude until the probation office prepared the presentence investigation report.  Id. at 1413.  The LaBonte court also stated that the petitioner's "self serving statement that, but for his counsel's inadequate advice he would have pleaded not guilty, unaccompanied by either a claim of innocence or the articulation of any plausible defense that he could have raised had he opted for a trial, is insufficient to demonstrate the required prejudice."  Id.

At Alcott's plea colloquy, as in LaBonte, the Court went through the plea agreement, including the waiver, in the presence of petitioner.  Alcott confirmed, on the record, that he had read the agreement, that he was not pressured into pleading guilty by his attorney, and that he was satisfied with his attorney.  (Plea Hr'g Tr. 4-6.)  He stated that no one had made any promises to him or threats against him other than those promises contained within the agreement and that no one had promised him what the Court's sentence would be.  (Id. at 5-6.)  The Court was careful to explain to petitioner that his sentence could not be calculated with certitude until the sentencing hearing and emphasized that it was going to be a "complicated sentencing"

-13-

because there "are many moving parts." (Id. at 11.)  The Court explained that the probation office would recommend a sentencing guidelines range, that each side would then have an opportunity to file objections, and that, after a hearing, the Court would determine the actual guidelines range.  (Id.)  After Alcott acknowledged his understanding of the process, the Court advised him that, under both sides' preliminary calculations, it "looks likely that the bottom end of the guideline range will be in the vicinity of 77 months." (Id. at 12.)  A few moments earlier, the government had stated that the estimated high-end was 137 months. (Id. at 10.)  The government had also stated that crime of bank fraud carried possible penalties of up to thirty years incarceration per count and the Travel Act violation carried a possible penalty of up to five years incarceration.  (Id. at 6-7.)  The fact that the Court's estimate of 77 months was slightly below the ultimate low-end of the applicable guidelines range does not suffice to establish prejudice, as the petitioner confirmed his understanding of the repeated warnings that any range stated at the plea colloquy was merely an estimate.

Seizing upon the language of the Court and counsel describing the agreement as complex and complicated, the petitioner contends that he did not have enough time to review the agreement and that it was impossible for him to have fully understood the plea and its waivers.  However, as noted above, at

-14-

the plea colloquy, Alcott stated that he had read the plea agreement and was not pressured to sign by his lawyer. Addressing Alcott directly, the Court advised Alcott that, by accepting the plea agreement, he had waived most of his rights to appeal, but noted that he did retain some residual rights under paragraph seven of the agreement.  The Court then asked Alcott whether he had a chance to discuss that with his attorney; he responded, "Yes."  (Id. at 12.)

Moreover, Alcott's petition does not contain either a claim of innocence or an articulation of any plausible defense that he could have raised had he opted for a trial; he merely contends that he would not have signed the plea agreement had he known that he would be subject to sentencing as a career offender. Under LaBonte, this "self-serving" statement is "insufficient to demonstrate the required prejudice."  LaBonte, 146 F. Supp. 2d at 1413.  Cf. Torres Rosa v. United States, 146 F. Supp. 2d 129, 133-34 (D.P.R. 2001) (relying on LaBonte in rejecting petitioner's claim that his counsel's failure to advise him that his prior convictions could render him a career offender constituted ineffective assistance of counsel).

Thus, even if Alcott's attorney never apprised Alcott of the possibility that he could be sentenced as a career offender, Alcott's claim of ineffective assistance of counsel on this ground still fails due to an inability to demonstrate prejudice.

2.  The Elusive Exculpatory E-mail

-15-

Alcott alleges that at some time between February 16, 2005 and March 22, 2005, he sent an e-mail stating something like, "Have a nice life and don't worry.  I will not bother you ever again," to the doctor whom he was extorting.  Alcott maintains that the e-mail demonstrates his intent to end the extortion scheme before the authorities became involved and that, as a result, he should only have been considered guilty of attempted extortion, a difference that would have entitled him to a three-level reduction.  Alcott submits that his lawyer was ineffective because he failed to seek discovery from the government regarding this purported e-mail.  The government responds that it has knowledge of only one e-mail from Alcott indicating a desire to end the blackmail scheme (dated March 18, 2005) and maintains that it provided this e-mail to both Alcott's counsel and the Court in April 2005, prior to Alcott's acceptance of the plea agreement.  The government also maintains that it has no knowledge of any other e-mail of the type Alcott describes and submitted an affidavit to that effect.  (<u>See</u> Aff. of Scott A. Robbins [Docket No. 91-7] ¶¶ 10-12.)

Again, the Court can dispose of this claim on the ground that Alcott has failed to demonstrate sufficient prejudice.  <u>See</u> <u>Malone</u>, 536 F.3d at 64.  First, Alcott is mistaken in his belief that such an e-mail, were it to exist, would transform his violation into an "attempt."  The elements of the crime of

extortion in Massachusetts are "(1) a malicious threat (2) made to a named person (3) to accuse someone of a crime or to injure someone's person or property (4) with intent to extort money." Commonwealth v. Miller, 385 Mass. 521, 525-28 (1982) (interpreting Mass. Gen. Laws ch. 265, § 25 and holding that a threat to harm another's reputation by exposing details of a sexual relationship constitutes an injury to "someone's person" under the extortion statute).[2]  The crime was arguably complete when Alcott sent the first letter to the doctor on February 7, 2005, and certainly was rendered complete with the series of threatening communications made by Alcott through February 16, 2005.  Any e-mail sent by Alcott after that date, no matter how apologetic, cannot transform an already completed crime into an attempt.

Moreover, this Court considered and rejected this very question at the sentencing hearing.  There, Alcott's counsel argued, on the basis of the already-produced March 18, 2005 e-mail from Alcott indicating a desire to end the blackmail, that the crime was really one of attempt and warranted a three-level

---

[2] Alcott pled guilty to a violation of the Travel Act, 18 U.S.C. § 1952, under which it is a crime to "use[] the mail or any facility in interstate or foreign commerce, with intent to . . . distribute the proceeds of any unlawful activity." 18 U.S.C. § 1952(a)(1).  Under the Travel Act, "unlawful activity" includes "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."  18 U.S.C. § 1952(b).  Accordingly, the Massachusetts crime of extortion is the relevant law in the instant case.

reduction.  This Court explicitly rejected this argument, noting that a decision months after-the-fact that "maybe I shouldn't be doing this anymore" did not magically convert his actions into a mere attempt.[3]  (Sentencing Hr'g Tr. 8.)

It is true that if another e-mail existed (and this Court has no reasonable basis for concluding that it did), the government had the obligation to disclose it under Brady because it may have demonstrated mitigating evidence, possibly relevant to a variance in a post-Booker world.  However, the Court already had access to a similar e-mail.  Another e-mail of similar ilk would have made no difference in light of the aggravating factors.

### 3. Psychiatric Evidence

Finally, Alcott insists that his counsel failed to adequately present evidence of his psychiatric condition to the Court.  Alcott takes issue with his counsel's framing of such evidence, contending that the attorney's decision not to file a separate motion for downward departure but rather to subsume the psychological argument into his Booker-based argument constitutes an unreasonable error.  Specifically, Alcott complains that because the report of a psychiatrist was vague and incomplete,

---

[3] Even if Alcott's extortion violation were to be deemed only an "attempt," it would still qualify as a "crime of violence."  See U.S.S.G. § 4B1.2 n.1 ("Crime of violence ... include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.").

his attorney decided not to use the evaluation at the last minute.  Alcott apparently blames the attorney for the expert's supposed shortcoming because the attorney had selected the expert.

In order to show that a "counsel's performance fell below an objective standard of reasonableness," as required under the first prong of Strickland, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'"  Gomes v. Brady, 564 F.3d 532, 540 (1st Cir. 2009) (quoting Strickland, 466 U.S. at 689).  Alcott, however, does not present any argument as to why declining to pursue a formal departure agreement or to call the psychiatrist as a witness was objectively unreasonable, or was a decision that "no competent lawyer would have reasonably" made. Id. (quoting Lynch v. Ficco, 438 F.3d 35, 49 (1st Cir. 2006)). He does not provide any evidence available, but not presented, at the time of sentencing that might have supported a downward departure motion.  Instead he cites only to the positive response to medications and therapy he has experienced while incarcerated and seeks to have this Court order a new psychiatric evaluation to be used as the basis for a new downward departure motion. That Alcott believes that the treatment he is currently receiving is helping him to understand and address issues that have plagued him throughout his life is significant and encouraging.  It is

-19-

not, however, grounds to declare that his counsel's tactical decision at the sentencing hearing several years prior was unreasonable.

Moreover, Alcott's counsel presented extensive evidence as to Alcott's mental health in great depth, in both his briefing and at the hearing.  He submitted a sentencing memorandum which, with exhibits, totaled 136 pages and contained discussion and documentation of such issues.  (See Def.'s Sentencing Mem. [Docket No. 50].)  And though defense counsel elected not to call the psychiatric expert and did not file a separate motion for downward departure, he noted that, in his view, the basis of the psychiatric argument was the same.  (Sentencing Hr'g Tr. 49-50.) He then explained to the Court that Alcott had suffered sexual abuse when he was a student at Boston College High School and posited that the bizarre nature of Alcott's criminal history is consistent with someone who has been sexually abused.  (Id. at 42.)  He argued that, given Alcott's history, the career offender status was inappropriate and asserted that a sentence within the guidelines range would be "very harsh for somebody with this history."  (Id. at 43.)  He also raised the fact that Alcott has struggled with alcoholism for many years.

Thus, this Court was well apprised of Alcott's difficult past and his struggles with mental health.  As the record makes clear, the Court considered the impact that the childhood sexual

abuse had upon Alcott's mental health in deciding what sentence to impose.  In fact, the Court expressed concern regarding a possible bipolar condition and accordingly ordered an evaluation at a Federal Medical Center.  (Sentencing Hr'g Tr. 63.)  The Court also recommended mental health counseling with a special focus on his history of sexual abuse during Alcott's five years of supervised release.  Alcott has not pointed to any psychiatric evidence, in existence at the time of sentencing, that would have dramatically altered the Court's calculus and thus cannot demonstrate any actual prejudice arising from his counsel's decision.  As he has failed to establish either prong of the <u>Strickland</u> standard, his ineffective assistance of counsel claim fails.

In sum, as this Court made clear at the sentencing hearing, Alcott's sentence resulted from a complicated weighing of many factors, including the serial nature of his criminal history and his particularly egregious behavior during the period of supervised release, not from any shortcomings of counsel.

### IV. <u>ORDER</u>

For the foregoing reasons, Alcott's petition (Docket No. 85) is **<u>DENIED</u>**.

<u>S/PATTI B. SARIS</u>
United States District Judge

-21-